**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 23-cv-01966-JLK

LACEY GANZY, on behalf of J.G. and N.G., minor children;
JON and MISTY MARTIN, on behalf of C.M., a minor child; and
NADARIAN and ALEXIS CLARK, on behalf of D.C., a minor child,

      Plaintiffs,

v.

DOUGLAS COUNTY SCHOOL DISTRICT RE-1, a school district; and
JOHN VEIT, in his official and individual capacity,

      Defendants.

---

**ORDER DENYING DEFENDANT JOHN VEIT'S MOTION TO DISMISS (ECF NO. 19)[1]**

---

Kane, J.

      In this case involving race-based discrimination in education, parents bring claims on behalf of their Black and biracial children who were students at Castle Rock Middle School ("CRMS") and Douglas County High School. Am. Compl. ¶¶ 57-58, 82-85, ECF No. 9. Both schools are part of Douglas County School District RE-1 (the "School District"). *Id.* ¶¶ 17, 20. Plaintiffs[2] sue the School District and John Veit, the principal of CRMS,[3] alleging pervasive and

---

[1] This Order contains racial slurs and descriptions of disturbing conduct based on the allegations in the Amended Complaint. The nature of the case demands that such allegations not be watered down or side-stepped.

[2] I use the term "Plaintiffs" to refer to the children on whose behalf the claims in this case are brought, J.G., N.G., C.M., and D.C. Plaintiff N.G. was a student at Douglas County High School, Am. Compl. ¶ 48, and the associated allegations are not at issue here.

[3] Plaintiffs originally included the Board of Education for the School District as a defendant in this case, but the parties later stipulated to the dismissal of the Board of Education from the case. *See* Stipulation of Dismissal at 1, ECF No. 18.

intolerable racial discrimination by other students and teachers. Presently before me is Defendant Veit's Motion to Dismiss Third Claim for Relief (ECF No. 19).

Plaintiffs' Amended Complaint asserts three claims for relief: (1) a claim brought under Title VI of the Civil Rights Act of 1964 against the School District for its failure "to take appropriate remedial action to prevent, deter, mitigate, and eradicate the racist harassment to Black and biracial students," *id.* ¶ 217; (2) an equal-protection claim brought pursuant to 42 U.S.C. § 1983 against the School District and Mr. Veit for their deficient policies, training, and action on racial harassment and abuse of students; and (3) a claim against Mr. Veit asserted under 42 U.S.C. § 1986 for his failure to prevent a conspiracy to deprive the students of equal protection of the laws. Mr. Veit's Motion to Dismiss argues Plaintiffs' third claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because he is entitled to qualified immunity on that claim. I find Mr. Veit's Motion to be groundless and consequently deny it.

## I.  Applicable Legal Standards

Under Rule 12(b)(6), a party may file a motion to dismiss asserting that a pleading fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In reviewing a Rule 12(b)(6) motion, "all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Moore v.*

*Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (quoting *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). But "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).[4] "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 231. "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant asserts qualified immunity, the plaintiff must point to allegations showing "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citing *Pearson*, 555 U.S. at 232). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quoting *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 511

---

[4] Given its controversial and inconsistent application, a critical account of the invention of qualified immunity is worth reviewing. *See generally Green v. Thomas*, No. 3:23-cv-126-CWR-ASH, 2024 WL 2269133, at *5 (S.D. Miss. May 20, 2024).

(10th Cir. 2011)). "[T]he clearly established law must be 'particularized' to the facts of the case," *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)), and "should not be defined 'at a high level of generality,'" *id.* at 552 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). A prior case need not, however, have "identical" facts. *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (citing *Klen*, 661 F.3d at 511). The fundamental question is whether the "clearly established right is one that is 'sufficiently clear that every reasonable official would have understood what he is doing violates that right.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

## II. Analysis

Plaintiffs' third claim is brought against Mr. Veit under 42 U.S.C. § 1986. That statute provides:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .

42 U.S.C. § 1986. Plaintiffs allege students at CRMS conspired "to deprive them, and succeeded in so doing, of equal protection opportunities because of their race," in violation of 42 U.S.C. § 1985. Am. Compl. ¶ 246. Plaintiffs do not, however, assert a claim against those students under § 1985. Plaintiffs bring only their claim under § 1986 against Mr. Veit for his failure to prevent the conspiracy.

Mr. Veit contends he is entitled to qualified immunity on this claim under both prongs of the qualified-immunity standard. First, he avers "[i]t is not clearly established that a plaintiff may proceed with a § 1986 claim against a government official without asserting a claim for violation

4

of § 1985." Veit Mot. to Dismiss at 6. Second, he contends "Plaintiffs do not plausibly allege a conspiracy contemplated by § 1985." *Id.* at 7. Both arguments are meritless. I start with the sufficiency of the allegations in the Amended Complaint and then I discuss the clearly established law.

*Sufficiency of the Allegations*

To succeed on their § 1986 claim against Mr. Veit, Plaintiffs must establish a conspiracy to interfere with civil rights as described in § 1985. *See, e.g.*, *Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984). ("[T]here can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985."). The Amended Complaint alleges Plaintiffs' peers engaged in a conspiracy under § 1985(3). *See* Am. Compl. ¶ 243. "The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)). Additionally, § 1985(3) applies "only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Id.* (quoting *Griffin*, 403 U.S. at 101-02). And § 1985(3) "covers only conspiracies 'aimed at interfering with rights that are protected against private, as well as official, encroachment.'" *Id.* (quoting *Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983)). Along with establishing a § 1985 conspiracy, a plaintiff asserting a § 1986 claim must show (1) the defendant had knowledge of the conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a violation of § 1985, (3) the defendant neglected or refused to prevent the violation, and (4) a violation of § 1985 occurred. 42 U.S.C. § 1986.

Mr. Veit insists "Plaintiffs have not plausibly alleged a conspiracy under § 1985(3)." Veit Mot. to Dismiss at 8. Specifically, he claims "the Amended Complaint is devoid of any allegation that Plaintiffs' peers *entered into an agreement* to harass them to the point that they were deprived of their rights and then *took action in furtherance of that agreement*." *Id.* In his Reply in Support of his Motion to Dismiss, Mr. Veit adds that Plaintiffs "have not explained how their Amended Complaint establishes agreement among persons and acts in furtherance of that agreement that Veit knew about with anything other than conclusory allegations." Veit Reply in Supp. of Mot. to Dismiss at 4, ECF No. 26. From these statements, it can be gathered that Mr. Veit's challenges the sufficiency of Plaintiffs' allegations in relation to three elements of the § 1986 claim: the existence of a conspiracy, an action in furtherance of the conspiracy, and Mr. Veit's knowledge of the conspiracy.

For a conspiracy to exist, there must be a meeting of the minds of the conspirators regarding "the general conspiratorial objective," but there need not be an express agreement. *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990) (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754 (1980)). The existence of a conspiracy often must be established through circumstantial evidence as direct evidence of an express agreement is rare. *Id.*

Here, the allegations in the Amended Complaint show a concerted effort by students to humiliate, terrorize, and alienate J.G., C.M., and D.C. At CRMS, J.G., C.M., and D.C. were the only Black or biracial students in their group of students who shared teachers and classes with each other. Am. Compl. ¶ 85. Plaintiffs allege J.G., C.M., and D.C. were subjected to harassment from their fellow students based on their race, including "verbal insults, racist jokes, and threats

of violence." *Id.* ¶ 87. Because a summary would not suffice, I provide the following excerpt of

the allegations of verbal abuse in the Amended Complaint.

    a. J.G., D.C., and C.M., routinely heard their peers referring to "niggers" and "niggahs."

        i. One female told four other students in front of C.M. that she hoped another Black student wouldn't join the class because "we already have one nigger in this class."

        ii. Another time in gym class after knocking into a different female student during a game, she called C.M. a "nigger" to his face.

        iii. Some of C.M.'s fellow students asked him for a "N-word pass," meaning a free pass by which they could use the N-word around him with impunity.

        iv. Similarly, students told D.C. that they could use the n-word because they had a "pass" based on knowing someone who was Black or had a Black friend.

    b. Peers regularly referred to J.G., C.M., and D.C. as "monkeys," a racist epithet long used to deride Black individuals as lazy or foolish and more akin to apes than persons.

        i. A student made up and called C.M. the racist moniker "Monkey M." enmeshing his last name with the derogatory epithet Monkey and continuously using it.

        ii. One student called D.C. "monkey boy" as other students laughed along. She continued to call him "monkey boy" after that even though she knew it had upset him and he asked her to stop.

        iii. Another student showed D.C. a meme of C.M. on social media calling him "Monkey M." and tried to get him to laugh at it despite D.C.'s obvious aversion and distress.

    c. Classmates also revived the racist reference to "cotton-pickers," making fun of J.G., C.M., and D.C. by reducing them to enslaved persons or sharecroppers and laughing at the painful past of slavery and racial discrimination and exploitation.

        i. One student told C.M. to "go back to the plantation you cotton-picking monkey."

        ii. Students asked J.G. whether he picked the cotton his shirt was spun from.

        iii. Another student threw cotton balls at J.G., laughing at him.

        iv. Another student physically grabbed J.G. by his shirt while using the epithet, trying to insult him and goad him into fighting.

    d. Classmates circulated humiliating racist tropes and memes and images of Black students, particularly C.M.

        i. Students took pictures of C.M. while he was using the restroom without his knowledge and circulated it widely on the internet.

      ii.  Other students began to create racist memes of C.M. invoking the moniker "Monkey M." and circulating them.

  e.  Racist bullying became appreciably worse during Black History Month, as students used it as an opportunity not to learn about Black History but instead to ridicule Black students.
      i.  At the end of Black History Month, a student approached J.G. and told him that his month was over, and he could go back to wherever he came from.
      ii.  Another student ridiculed Black accomplishments in general, laughing at J.G. and asking him why Black people needed their own month at all.

*Id.* ¶ 89 (footnote omitted). Particularly revealing are the allegations that students openly expressed their dislike for sharing a classroom with C.M., J.G., or Black students generally. *See id.* (alleging that a student told four other students in front of C.M. that she hoped another Black student would not join the class; a student said to C.M.: "go back to the planation you cotton-picking monkey"; and a student urged J.G. to go back to wherever he came from).

     The Amended Complaint alleges that part of the race-based harassment of J.G., C.M., and D.C. took place through a Snapchat group with "well over one hundred students" in which "racially offensive comments and threat of killings were commonplace" and students often "tagg[ed] their few Black fellow students so that they would be sure to see the vile messages." *Id.* ¶¶ 88, 115-16. The Snapchat group was disbanded, but a few screenshots of the posts were captured beforehand. *Id.* ¶ 117. Again, I include an excerpt of the posts reproduced in the Amended Complaint to provide the full context. The Amended Complaint alleges:

  a.  A female student made a video of herself manipulating her voice and saying the word "nigger" in digitized tones multiple times, and then eyeballing the camera while stating she was "smoking the [marijuana] right now."

  b.  A male student stated, "i love negges," "I hate niggers," posted a question about "who wants to rob a vape store" with a meme picture of a Black male jacking off and the captions "U JUST GOT CUMMED ON." He also stated "I HATE NIGGERS," and "n to the I to the g to the g to the e to the r."

c.  Another male student posted "I'm a big truck driver trump supporter get me a buckshot and shoot me a nigger ██████████ "

d.  Another student posted an emoji morphing a Black person with the cartoon character "piglet" from Winnie the Pooh, calling the meme a "niglet":



e.  Two students spoke about eliminating African Americans from the planet, with one proclaiming that "we should j remove blacks from this planet bring back toho [sic] holocaust…" and the other indicating in response that Black people should just kill themselves and reposting a monkey/banana meme from another student in response agreeing:

*Id.* ¶ 116 (footnote omitted). Similar to the allegations regarding verbal harassment, in these exchanges in the Snapchat group, students overtly expressed their desire for Black people to be harmed and even eliminated from the planet. *Id.*

Although there may not have been an express agreement, the concerted message from students was clear: J.G., C.M., and D.C. were not welcome to receive the same education at CRMS. That there was a meeting of the minds regarding this general conspiratorial objective can easily be inferred from Plaintiffs' allegations.

As for the other two elements of the § 1986 claim that are challenged by Mr. Veit, the Amended Complaint contains allegations specific to each. The Amended Complaint alleges the conspirators took actions in furtherance of the conspiracy, including insulting J.G., C.M., and D.C., circulating racist tropes and memes, and physically and verbally provoking them. *See, e.g.*,

¶¶ 86-94, 101, 103, 105, 113, 115-16, 156, 173. The Amended Complaint specifically explains when and how Mr. Veit had knowledge of the conspiracy. According to the allegations, on March 10, 2023, Mr. Veit was forwarded an email from J.G. discussing students' racist conduct. *Id.* ¶¶ 120-21 (claiming the email informed Mr. Veit that J.G. "ha[d] constantly been racially profiled and offended by students at CRMS," who "often use[d] racial slurs near [him] and many others thinking it [was] funny," but it made J.G. "feel uncomfortable and unwanted in [his] school"). After receiving the email, Mr. Veit acknowledged he knew students of color were experiencing such discrimination. *Id.* ¶ 122. In April 2023, J.G.'s mother spoke with Mr. Veit about messages in the Snapchat group that she found to be threatening to her son. *Id.* ¶ 175. D.C.'s parents also discussed with Mr. Veit the discrimination their son was enduring at CRMS. *Id.* ¶ 191. And, at some point, Mr. Veit facilitated a conversation between D.C. and the female student who called him "monkey boy." *Id.* ¶ 111.

Without a doubt, the Amended Complaint sufficiently alleges the existence of a § 1985 conspiracy and Mr. Veit's knowledge of that conspiracy. Plaintiffs' third claim, therefore, survives the first prong of the qualified-immunity standard.

*Clearly Established Law*

Mr. Veit contends Plaintiffs' claim fails at the second prong of the qualified-immunity standard because "[n]o Supreme Court or Tenth Circuit decision suggests" Plaintiffs may "hold [Mr.] Veit responsible for failing to prevent an alleged § 1985 conspiracy by Plaintiffs' peers without asserting a § 1985 claim." Veit Mot. to Dismiss at 6. First, it is clear from the text of the statute and the case law cited by Mr. Veit that Plaintiffs may assert a § 1986 claim without a §

1985 claim. And, second, Mr. Veit's argument misapplies the second prong's clearly-established-law inquiry.

The language of § 1986 does not require that a plaintiff assert a claim under § 1985 in order to hold an individual liable under § 1986. Section 1986 demands only that a plaintiff show the defendant had "knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed." 42 U.S.C. § 1986. There is no reason to read into § 1986 the condition that a plaintiff assert a § 1985 claim. The history of the provisions' enactments as part of the Ku Klux Klan Act of 1871 supports this conclusion. As Plaintiffs discuss, the complementary statutes ensured, that even if conspiring individuals successfully concealed their identities, any person with knowledge of the conspiracy and some power to prevent the wrongful act could be held liable for failing to do so. *See* Pls.' Resp. to Mot. to Dismiss at 12-15.

Mr. Veit cites a handful of Tenth Circuit cases that he contends "suggest" Plaintiffs do not have the right to hold him responsible for failing to prevent an alleged § 1985 conspiracy without also asserting a § 1985 claim. None of the cited cases supports that conclusion. To be sure, in *Santistevan v. Loveridge*, the court stated: "[T]here can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985." 732 F.2d at 118. However, the plaintiffs in that case had asserted claims for conspiracy under § 1985(1) and § 1985(3), and those claims were subject to dismissal because there were no allegations of class-based or racial discriminatory animus. *See id.* 117-18. So, the plaintiffs failed to allege facts necessary to substantiate the existence of a § 1985 conspiracy. As I have just found, that is not the case here. Likewise, in *Taylor v. Nichols*, the plaintiff asserted a claim under § 1985, and the court found "[t]he Section 1985 allegations fail here because the plaintiff has failed to make even

a minimal showing that he was denied equal protection or equal privileges and immunities guaranteed by federal law or the federal Constitution." 558 F.2d 561, 568 (10th Cir. 1977). Accordingly, the court dismissed the plaintiff's § 1986 claim as well. *Id.* ("Inasmuch as the Section 1985 action is insufficient, the allegations under 42 U.S.C. Section 1986 also fail."). Citing *Taylor*, the court in *Brown v. Chaffee*, concluded that "[t]he 42 U.S.C. s 1986 claim is dependent on the existence of a cause of action under section 1985." 612 F.2d 497, 502 (10th Cir. 1979). Similar to the other cases, the court made this statement after it determined that the § 1985 claim brought by the plaintiff was not supported by sufficient allegations in the complaint. *Id.* In *Brown v. Reardon*, the court cited *Chaffee* and again made clear that a § 1986 claim could not be brought if the § 1985 claim asserted by the plaintiffs was invalid. 770 F.2d 896, 905-07 (10th Cir. 1985).[5] The lesson from these cases, then, is not that a plaintiff must bring a § 1985 claim in order to proceed under § 1986, but that a complaint must contain sufficient allegations to satisfy all the elements of a § 1986 claim, including the existence of a § 1985 conspiracy. Consequently, I find there is no basis for concluding that a plaintiff must assert a § 1985 claim in order to pursue a § 1986 claim.

Mr. Veit contends that, regardless of whether Plaintiffs may plead their § 1986 claim without bringing a separate § 1985 claim, he is entitled to qualified immunity because Plaintiffs' right to proceed in such a way was not clearly established. As Plaintiffs explain, Mr. Veit "does not claim ignorance of the underlying violation of Plaintiffs' civil rights, only ambiguity as to whether a § 1985 [claim] must be simultaneously alleged in a complaint if a claim under § 1986

---

[5] Mr. Veit also references *Mahan v. Huber*, a District of Colorado case in which the magistrate judge cited *Taylor* for the proposition that "[a] claim under 42 U.S.C. § 1986 is dependent on the existence of a claim under section 1985." No. 09-cv-00098-PAB-BNB, 2010 WL 749815, at *8 (D. Colo. Mar. 2, 2010). As with the other cases, *Mahan* involved a plaintiff who asserted deficient claims under § 1985(2) and § 1985(3). *Id.* at *7-*8.

is to be sustained." Pls.' Resp. to Mot. to Dismiss at 9, ECF No. 25. In effect, Mr. Veit argues that, even if his conduct violated § 1986, the qualified-immunity standard demands that every reasonable official must have understood Plaintiffs could sue him under § 1986 without suing the members of the underlying conspiracy under § 1985. His argument distorts the standard.

In considering the second prong of the qualified-immunity standard, "[t]he dispositive question is 'whether the violative nature of the *particular* conduct is clearly established.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). The analysis turns on the defendant's conduct. The inquiry is whether "every reasonable official would have understood what he [wa]s doing violate[d] [a] right," *Mullenix*, 136 S. Ct. at 308 (quoting *Reichle*, 566 U.S. at 664), not whether an official would have understood exactly how he could be held liable for that violation. Applied here, the question is whether every reasonable official would have understood that what Mr. Veit did violated Plaintiffs' statutory rights under § 1986. Plaintiffs hold those rights regardless of whether they may bring a § 1986 claim alone or they must bring a claim under § 1985 as well.

### III. Conclusion

Mr. Veit's arguments under both prongs of the qualified-immunity standard fail such that he is not entitled to qualified immunity on Plaintiffs' third claim. His Motion to Dismiss (ECF No. 19) is, therefore, DENIED. The parties are directed to jointly call my chambers at (303) 844-6118 on or before August 13, 2024, to set a date and time for a scheduling conference.

DATED this 8th day of August, 2024.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE